ISLAND HOMES, INC., an Alaska Corporation, Appellant,

v.

CITY OF FAIRBANKS, Alaska,
a Municipal Corporation,
Appellee.

No. 687.

Supreme Court of Alaska.

Dec. 12, 1966.

Walter Sczudlo, Fairbanks, Josef Diamond, Lycette, Diamond & Sylvester, Seattle, Wash., for appellant.

Dallas L. Phillips, Fairbanks, for appellee.

## OPINION

Before NESBETT, C. J., and DIMOND and RABINOWITZ, JJ.

NESBETT, Chief Justice.

In this appeal we are required to construe the rights and responsibilities of the parties with relation to a sewerage system constructed in 1955 to serve a federally financed housing development.

In 1951, appellant corporation purchased sufficient land near Fairbanks, Alaska, upon which to construct approximately 150 houses. Negotiations were eventually consummated whereby appellant's loan application to Alaska Housing Authority (A.H.A.) for a loan sufficient to construct the houses was approved by that authority, by the Federal Housing Authority, which insured the purchaser's mortgages, and by the Housing and Home Finance Agency, which furnished the money.

In order to comply with the loan requirements of F.H.A. and H.H.F.A., appellant prepared a plat of the proposed housing development which set out the blocks, streets, and lots and which contained a lengthy "dedication" typed on the plat. Insofar as is pertinent to the issues herein, the dedication stated:

> ISLAND HOMES, INC. * * * owner in fee simple of * * * the area designated as Block B, or 'Utility Area', * * * do hereby declare this revised plat and dedicate to the use of the public forever all streets shown thereon and the use thereof for all public purposes. * * * all easements or whatever public property, areas or places * * * including those areas * * * [describing utility areas]
>
> RESERVING FURTHER, HOWEVER, forever, unto the grantors, their heirs, successors and assigns, for the pur-

poses of the installation, repair, maintenance, alteration, upkeep and operation of sewers, water mains, * * * easements in, into, upon, over, across and under strips of land not to exceed five (5) feet in width along the rear lot lines only of all lots as now or hereafter subdivided * * *.

Under Part I of the Protective Covenants which were also typed on the plat, appellant covenanted that it would construct and provide an adequate sewerage system for the area to be subdivided. This covenant also stated in part as follows:

> ISLAND HOMES, INC., its successors or assigns, will operate and maintain such sewerage system until such time as the sewerage system shall be transferred and conveyed to an incorporated city, public body, governmental authority, or other person, corporation or organization for the operation and maintenance of said sewerage system. * * * Grantor, ISLAND HOMES, INC., reserves the right to transfer said sewerage system to an incorporated city, public body, governmental authority or other person, corporation or organization who will assume and agree to maintain such service and furnish such service to the lot owners in said areas upon the same terms and conditions herein provided, at which time the Grantor will have no further liability or obligation under this covenant.

On January 14, 1952, Island Homes executed a trust deed in favor of A.H.A. as trustee, conveying:

> (A) All of its right, title and interest in and to the following described real property:
>
> * * * * * *
>
> (B) The sewerage collection system, in its entirety, including all appurtenances thereunto and including easements over, under and along the streets, roads and avenues of said subdivision.

On June 17, 1952, the trust deed was amended by deleting Paragraph 1 and substituting a new Paragraph 1 which read as follows:

> 1. This grant is for the benefit of the present and future owners of all and each of the buildings and houses on those lots and areas presently sub-divided into building lots or public areas as shown on the recorded plat of Slater's subdivision, as well as the holders of the mortgages covering each of the dwellings and insured by the Federal Housing Administration, and Trustee shall hold the title to the property granted by this indenture in trust for the uses as herein set forth until either (a) the said sewerage collection system is taken over by an incorporated city, public body, or governmental authority for maintenance and operation, or (b) some other person, firm or corporation acceptable to Alaska Housing Authority agrees to maintain and operate said sewerage collection system upon and subject to the terms and conditions herein contained. Upon the happening of either of the conditions described under (a) or (b) above, this indenture shall be of no further effect, and (1) in the event sewerage system is taken over by a governmental body for maintenance and operation it shall be conveyed to such governmental body in trust for the uses as herein provided, or if sewerage system is disposed of as provided under (b) above, sewerage system shall be conveyed to such person, firm or corporation in trust for the uses and upon the terms and conditions as provided in this instrument. The trust created hereby shall also terminate upon provision of other adequate sewerage disposal service by an incorporated city, public body, or governmental authority through means other than the operation of sewerage system and facilities now transferred to the Trustee herein, provided payment in full has been made of the indebtedness of $300,000 incurred by ISLAND HOMES, INC. to Alaska Housing Authority for construction of sewerage system and other utilities. Upon the provision of such other sewerage system and provided pay-

ment has been made as described above, then all or any portion of the sewerage system or facilities utilized or to be utilized in such other system shall be conveyed to the incorporated city, public body or governmental authority providing such other system and the remainder, if any, of such system and facilities shall be reconveyed, to grantors, their successors or assigns.

The houses constructed in the subdivision were foreclosed during 1955 and on January 1, 1956, possession and ownership of the houses was taken by F.H.A. Island Homes continued to supply utility services, but as a result of disputes with F.H.A. it surrendered possession of all utilities except the sewerage system to A.H.A. which operated them under a management agreement with F.H.A. Island Homes continued to operate the sewerage service for the subdivision, although not without considerable friction with F.H.A. and A.H.A. over the amount of the monthly charge which should be assessed each home for this service.

After the subdivision had been annexed by the City of Fairbanks, and on April 25, 1963, A.H.A., by deed, quitclaimed to the City of Fairbanks:

> [A]ll interest which it has, if any, in the following described property:
>
> \*   \*   \*   \*   \*   \*
>
> sewage collection and disposal facilities, including 10180 lineal feet of wood stave pipe mains and laterals, a sewage lift station, a sewage treatment plant, 25 manholes and other necessary appurtenances \* \* \* all situated in Slater Subdivision \* \* \*.

On April 30, 1963, A.H.A. executed a trust deed in favor of the City of Fairbanks, Alaska, which referred to the trust deed executed by Island Homes to A.H.A. as trustee on January 14, 1952, and amended on June 17, 1952. This trust deed stated in pertinent part that:

> WHEREAS, said Trust Deed and Amendment to Trust Deed concerned a certain sewerage collection system located in Slater Subdivision, near Fairbanks,

Alaska, and provided that if said sewerage collection system were taken over by an incorporated city for maintenance and operation, the Trust Deed and Amendment to Trust Deed should be of no further effect and the sewerage system should be conveyed to the incorporated city for the uses provided in the Trust Deed and Amendment to Trust Deed; and

> WHEREAS, Grantee has annexed the area containing said sewerage collection system and the other property involved in the Trust Deed and Amendment to Trust Deed, and has assumed responsibility for maintenance and operation of said sewerage collection system, by accepting delivery from the Grantor herein of, and recording at book 152 of Deeds, page 148, in the Fairbanks Recording District, State of Alaska, a quitclaim deed conveying to Grantee herein all interest, if any, held by Grantor herein other than the trusteeship title conveyed by this instrument;

> WITNESSETH: Grantor, for and in consideration of the undertaking of Grantee, does hereby deed in trust to Grantee \* \* \*.

> (B) The sewerage collection system, in its entirety \* \* \*.

> This grant is for the benefit of the present and future owners of all and each of the buildings and houses \* \* \* [in] the Slater Subdivision, as well as the holders of the mortgages covering each of the dwellings and insured by the Federal Housing Administration.

On April 29, 1963, the City Council of Fairbanks enacted Resolutions No. 294 and 295 which accepted the quitclaim deed and trust deed, respectively, that A.H.A. had executed in favor of the City.

On April 30, 1963, the City of Fairbanks made a demand upon Island Homes for possession of the sewerage system which was refused. On February 4, 1964, the City sued to eject Island Homes from possession of the system. In its answer Island Homes denied the City's title and right

to possession and counterclaimed for $100,-000 damages for slander of its title to the sewerage system.

Appellant's contention below was, and on appeal is, that the dedication expressly reserved to Island Homes the right to possess and operate the sewerage system; that the dedication was limited to uses and easements for specific purposes and did not carry with it the fee title and that the only purpose and effect of the trust deed was to give A.H.A. certain controls.

Appellee's contention below was that after Island Homes executed the trust deed in 1952 it had no form of legal title in the sewerage system which would entitle it to compensation upon transfer of the system to another operator and that at best it had an administrative right. On appeal appellee also relies upon the decision of this court in Hardy v. Island Homes, Inc.[1] and upon the trial court's theory of dedication, both of which will be discussed later in this opinion.

In a memorandum opinion which served as findings of fact and conclusions of law, the trial court found that the trust deed from Island Homes to A.H.A. was a secured contract of obligation requiring Island Homes to operate a sewerage system until a government agency or other contractor approved by the trustee took over the operation; that the home owners served held the beneficial interest under the trust deed and that A.H.A. did not acquire a fee simple estate and did not, therefore, transfer a fee to the City of Fairbanks. The court held that the City became at best a substituted trustee.

The trial court then abandoned the legal theories advanced by the parties based upon the plat dedication, plat covenants, and trust deeds and adopted a legal theory more to its liking. It found that Island Homes was the owner in fee of all of the real property in the subdivision prior to its dedication; that upon the filing of the plat containing the dedication to the public on October 5, 1951, a fee simple determinable title to the land described passed to the public with only a reversion remaining in Island Homes; that only a failure of purpose or abandonment could activate the reversion and that neither had occurred; that upon annexation the fee passed to the City of Fairbanks as trustee and that ownership of the sewerage system cannot be separated from the fee in the utility area since it was built on public land. Judgment was granted to appellee.

We have not experienced the same difficulty that the trial court did in interpreting the trust deed and applying it to the facts of this case.

Island Homes was promoting the subdivision in the expectation of realizing a profit on the sale of the houses. The venture was being financed for the most part with funds borrowed from a federal agency. Without reliable utilities, including a sewerage system, the marketability of the homes would be impaired and their worth as security for the mortgages to be insured by F.H.A. would be questionable. Accordingly, it became a loan condition that Island Homes construct an adequate sewerage disposal system and agree to operate and maintain the system until a city or other responsible operator took the system over. The sewerage system thus constructed cost $283,000. Island Homes was required to furnish one-half the cost which it was to recover by adding a proportionate amount to the sales price of each house served. The remainder of the cost was furnished by Alaska Public Works through A.H.A. In order to insure the continuous and efficient operation of the sewerage system by Island Homes at a reasonable charge to the home purchasers, the original, and later the amended trust deeds were executed.

The amended trust deed expressly stated that its purpose was to benefit the present and future owners of the individual parcels of property, the mortgagees, and the F.H.A. by providing for the continuous

1. 363 P.2d 637 (Alaska 1961).

operation and maintenance of the sewer system. The document conveyed title to the sewerage system to A.H.A.:

> [I]n trust for the uses as herein set forth until either (a) the said sewerage collection system is taken over by an incorporated city, public body, or governmental authority for maintenance and operation, or (b) some other person, firm or corporation acceptable to Alaska Housing Authority agrees to maintain and operate the said sewerage * * * system * * *.

Under the above wording legal title to the sewerage system passed from Island Homes to A.H.A. as trustee and an equitable title passed to the present and future owners of the individual parcels of property and the mortgagees and the F.H.A. as beneficiaries.

■ The quitclaim deed of the sewerage system from A.H.A. to the City of Fairbanks, executed on April 25, 1963, constituted the first step in bringing about a termination of the trust under (a) above as provided for in language immediately following (a) and (b) which stated:

> Upon the happening of either of the conditions described under (a) or (b) above, this indenture shall be of no further effect, and (1) in the event sewerage system is taken over by a governmental body for maintenance and opereration it shall be conveyed to such governmental body in trust for the uses as herein provided * * *.[2]

The quitclaim deed gave the City the occasion to "take over" the sewerage system by an ordinance accepting the deed to the system. The trusteeship of A.H.A. was terminated by the execution by A.H.A. of a trust deed transferring title to the City "in trust for the uses" as provided in the original trust deed.

2. In the original trust deed executed on January 14, 1952, this provision read as follows:
> [U]pon the happening of either of these conditions this indenture shall be of no further effect and Trustee shall thereupon immediately reconvey the

The trusteeship was formally accepted by the City of Fairbanks by the passage of Resolution No. 295.

■ While it is true that the trust deed does not specifically grant to A.H.A. the power to convey to the City, it is nevertheless abundantly clear from the document that conveyance "shall" be made to the governmental body taking over the operation and maintenance. The authority or responsibility for making the conveyance was not given to Island Homes. In this connection it is significant that a provision of Paragraph 1 of the original trust deed executed on January 14, 1952, provided a third alternative which stated:

> or (c) the said sewerage collection system is disposed of by Grantor, ISLAND HOMES, INC., to some other person, firm or corporation acceptable to Alaska Housing Authority who agrees * * *

was specifically deleted from Paragraph 1 of the amended trust deed executed on June 17, 1952. This fact is interpreted as an expression of intent that Island Homes should not have the right to convey under either (a) or (b) of the alternatives by which the trust could be terminated. This interpretation is consistent with the deletion from Paragraph 1 of the original trust deed of the requirement that upon the happening of either of the foregoing conditions the property should be reconveyed to Island Homes.

■ In holding that the trustee, A.H.A., had the authority to convey as it did, we apply a recognized rule of the law of trusts that a trustee may properly exercise such powers as are conferred upon him by the specific terms of the trust and those powers which are necessary or appropriate to carry out the purposes of the trust and are not forbidden by the terms of the trust.[3]

> property to the Grantor, ISLAND HOMES, INC., its successors or assigns.

3. Chase Nat. Bank of City of New York v. Citizens Gas Co., 113 F.2d 217, 227 (7th Cir. 1940) rev'd on other grounds,

■ Since the trust document neither expressly conferred nor expressly denied the trustee the power to convey to the governmental authority taking over the sewerage system, and since a conveyance was required to be executed by the terms of the trust deed, we find that the trustee had the implied power to convey in order to realize the object of the trust.

■ We find no merit in appellant's argument that the plat dedication of the streets and utility areas expressly reserved to Island Homes the right to possess and operate the sewerage system. We interpret the language relied upon, quoted on pages 2–3 of this opinion, as being no more than an assurance to Island Homes that it had the right to transfer the obligation of operating and maintaining the sewerage system if an incorporated city, public body, governmental authority or other responsible person would assume the obligation. The right to transfer the obligation under the facts of this case is not the same as the exclusive right to sell the system which appellant argues for. It must be remembered that the plat containing the language relied upon was filed on October 5, 1951. The amended trust deed, executed on June 17, 1952, spells out in greater detail the rights and responsibilities of Island Homes with respect to transferring the sewerage system. To the extent that its terms are inconsistent with the reservation language of the plat, we hold that the language of the amended trust deed shall govern as being the latest expression of intent.

■ The fact that, in amending the trust deed, specific language giving Island Homes the right to convey the sewerage system was eliminated, is sufficient to remove all force from appellant's argument. Nor is there anything in the transactions as a whole which makes it inequitable to hold

that Island Homes had no salable interest in the sewerage system. It was constructed as a necessary incident to selling houses. Although appellant advanced one-half the cost, it had the privilege of recovering its cash outlay by adding to the cost of the houses, which it did. For some reason, not fully explained in the record, appellant maintains that it was able to recover only 80 per cent of its cash outlay for the sewer system. While this may be unfortunate, it is a business reverse which cannot control our interpretation of the intent of the parties to the amended trust deed. All of the transactions reflected by the documents before us were based upon the assumption that Island Homes would be able to so manage its affairs as to recover its expenditure in full. To hold that it could sell the sewerage system under the facts of this case would be unfair to the property purchasers and the mortgagees. The property owners have paid or are paying for the existing sewerage system. If the City of Fairbanks were required to pay Island Homes for the system, a possibility which appellant contends was once discussed, the City would be required to recover the purchase price from the property owners by way of a special sewer assessment or otherwise. This would, in effect, be requiring the property owners to repurchase a sewerage system they had already paid for.

■ In construing and applying the terms of the trust deed as we have, we have considered the legal title to the sewerage system as being separate and distinct from the legal title to the land upon which it was constructed. It obviously was the intent of the parties to the trust deed that A.H.A. be given title to the system, which had yet to be constructed, so that it could, during the life of the agreement, act for the best interests of the beneficiaries by exercising

314 U.S. 63, 62 S.Ct. 15, 86 L.Ed. 47 (1941) ; Crutcher v. Joyce, 134 F.2d 809, 816 (10th Cir. 1943) ; Restatement (Second), Trusts § 186 (1959) states in part:
Extent of Trustee's Powers
\* \* \* the trustee can properly exercise such powers \* \* \* as

(a) are conferred upon him in specific words by the terms of the trust, or
(b) are necessary or appropriate to carry out the purposes of the trust and are not forbidden by the terms of the trust.

a control over the rates charged and to obtain a reliable interim operator in the event grantor defaulted, and ultimately to transfer the legal title in trust to a responsible governmental operator when one became available and agreeable to assuming the responsibility.

The decision herein is consistent with the holding of this court in Hardy v. Island Homes, Inc.[4] There the question before the court was whether Island Homes was justified in adding an amount representing replacement and depreciation of the sewerage system to its costs of operation in calculating a fair rate to be charged each property owner served. In holding that it was not so justified, this court stated:

> If Island Homes were the owner of the sewer plant and system by reason of an investment it had made, then 'deprecia-

tion', in the sense of that term as urged by Island Homes, might be taken into consideration in fixing the sewerage rate. * * *

But the record here militates against the existence of that type of situation. * * * There is nothing to establish that Island Homes ever had title to any of this property. And if it had, this was disposed of when it executed the trust deed and conveyed to the Authority what was described as 'the sewerage collection system, in its entirety, including all appurtenances * * *.'[5]

In view of our conclusions herein it follows that appellant has no legal right to recover on its counterclaim for slander of title.

The judgment below is affirmed.

4. 363 P.2d 637 (Alaska 1961).

5. Id. at 640.